UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| Richard N. Bell, | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:13-cv-00798-TWP-DKL |
| v. | ) | |
| | ) | |
| Cameron Taylor, | ) | |
| Taylor Computer Solutions,   et al | ) | |
| Defendants. | ) | |

## TAYLOR DEFENDANT'S MOTION FOR ATTORNEY FEES AND COSTS

Defendants, Cameron Taylor d/b/a Taylor Computer Solutions ("Taylor"), Fred O'Brien d/b/a Insurance Concepts ("O'Brien"), and Shanna Cheatham ("Cheatham")(collectively referred to as the "Taylor Defendants"), by counsel, and hereby move the Court for an award of attorney fees and costs ("fees motion") in the sum of $84,689.65, pursuant to 17 U.S.C. § 505, Federal Rules of Civil Procedure 54 and 68, Local Rule 54, and 28 U.S.C. § 1927, against the Plaintiff, Richard N. Bell ("Bell").  In support thereof, the Taylor Defendants state as follows:

## I.     INTRODUCTION / BACKGROUND FACTS

On June 7, 2011, Bell filed the first of a number of lawsuits under the federal Copyright Act for copyright infringement  of a daytime photo of the Indianapolis skyline ("Indianapolis Photo") under Case No. 1:11-cv-766 ("Case 766").  Case 766, Dkt. 1.  The Taylor Defendants were but three of a number of other defendants.  *Id.*  Following a pre-trial conference held on May 14, 2013, the Court severed Bell's claims against the Taylor Defendants into a separate cause of action under this Case No. 1:13-cv-798 ("Case 798").  Dkt. 5; Case 766, Dkt. 126, 127. Other similar lawsuits followed ("Bell lawsuits").[1]  These lawsuits are all fairly similar, alleging

---

[1] On January 8, 2013, Bell filed suit against forty-eight (48) named defendants for copyright infringement of the Indianapolis Photo under Case No. 1:13-cv-00035-TWP-DKL in the Southern District of Indiana.  A similar suit was filed on April 7, 2014 against twenty-two defendants under Case No. 1:14-cv-525.

copyright violations relating to the Indianapolis Photo.  A theft / conversion count was also included in these lawsuits, as was a claim for unfair competition.   Dkt. 5.

On May 2, 2014, the Taylor Defendants filed their Motion for Partial Summary Judgment on issues relating to dismissal of the untimely assertion of Plaintiff's alleged nighttime photo claim against Cameron Taylor, as well as on the issues of preemption and damages as to all defendants. Dkt. #'s 81-87.  In its "Entry On Defendant's Motion for Summary Judgment" ("SJ Order"), issued on August 26, 2014, the Court granted summary judgment in favor of the Taylor Defendants on all issues. Dkt. 105.  Bell then appealed the Court's SJ Order to the Seventh Circuit Court of Appeals ("CA7").  Dkt. 116.  The CA7's opinion held that it lacked jurisdiction over Bell's appeal because there was no final judgment.  Dkt. 133.  This case was then remanded to this Court for a determination on the issues of declaratory and injunctive relief, to the extent that those issues had not been addressed previously.  Dkt. 133.

On December 7, 2015, pursuant to its "Entry On Cross Motions for Summary Judgment" (Dkt. 163)("Cross Motion Entry"), this Court entered summary judgment in favor of the Taylor Defendants on the issues of injunctive and declaratory relief.  Dkt. 163.  Plaintiff's motion with respect to those issues was denied.  Dkt. 163 at 9.  This ruling effectively disposed of all pending claims which remained after the CA7's remand.  Dkt. 133.  Furthermore, the Cross Motion Entry effectively supplemented this Court's previous SJ Order and concluded this litigation in the Taylor Defendants favor on all issues.  Dkt. 105, 163.[2]  A "Final Judgment Pursuant to Fed. R. Civ. P. 58" ("Final Judgment") was accordingly entered in their favor.  Dkt. 165.

Based on the rulings set forth in the Cross Motion Entry and the SJ Order, the Taylor Defendants are the "prevailing party" under the Copyright Act, and thus entitled to recover their attorney's fees pursuant to 17 U.S.C. § 505.   While a District Court has some discretion in

---

[2] The Entry On Defendant's Motion for Summary Judgment (Dkt. 105) was unaffected by Bell's Motion for Reconsideration, a motion which was denied by this Court.  Dkt. 164.

deciding to award attorney's fees, in the Seventh Circuit, the presumption in favor of awarding fees to a prevailing defendant is "very strong."  Indeed it has been found to be reversible error not to award attorney's fees to a copyright infringement defendant that is dismissed "with prejudice."  The Taylor Defendants seeks an award of attorney's fees and costs of $84,689.65 and contend that they are entitled to fees both as the "prevailing party" within the meaning of § 505 and under Fed.R.Civ.P. 68.  The Summary of Fees and Costs is attached as Exhibit 1, hereto. A Declaration from the undersigned regarding same is attached as Exhibit 2, hereto.

## II.    LEGAL STANDARD FOR "PREVAILING PARY"

Under the Copyright Act, "the court in its discretion may allow the recovery of full costs by or against any party… the court may also award a reasonable attorney's fee to the prevailing party as a part of the costs."  17 U.S.C. § 505.[3]  A party prevails when it obtains a "material alteration of the legal relationship of the parties."  *Hyperquest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 387 (7th Cir. 2011) citing  *Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008).  Defendants who defeat a copyright infringement action are entitled to a strong presumption in favor of a grant of fees.  *Hyperquest, Inc.*, 517 F.3d at 387.

## III.    ARGUMENT:  The Taylor Defendants Are the "Prevailing Party" Within the Meaning of 17 U.S.C. § 505

In this case, the aggregate effect of the Court's SJ Order,  Cross Motion Entry, and Final Judgment, was a decisive legal victory for each and every one of the Taylor Defendants.  Dkt. 105, 106, 163, 164, and 165.  The fact that Bell was afforded no relief whatsoever hammers this point home.  As such,  the Taylor Defendants, individually and collectively, are the "prevailing party" based on rulings set forth in the those orders.

---

[3] **17 U.S.C. § 505. Remedies for infringement: Costs and attorney fees**:  "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."

Specifically, Cameron Taylor d/b/a Taylor Computer Solutions is a "prevailing party"
because Bell's claims against him were dismissed with prejudice.  Dkt. 105, p. 5.[4]  Thus, Taylor's

"legal relationship" with Bell has been "materially altered," because the claims may not be

asserted again.[5]  *Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008) (***reversing***

**district court's denial of attorney fees where defendant was dismissed with prejudice**, as

this constituted a "favorable judgment."); *Hyperquest Inc. v. N'site Solutions Inc*., 632 F.3d 377

(7th Cir., 2011) (**Affirming award of $134,958.42 in attorney's fees and costs to defendant**

**dismissed** from copyright infringement suit); *FM Industries Inc. v. Citicorp. Credit Servs. Inc*.,

614 F.3d 335 (7th Cir., 2010) (**Affirming award of "approximately $750,000 in attorneys'**

**fees under § 505" to a dismissed copyright infringement defendant**).

In addition, pursuant to this Court's SJ Order and the Cross Motion Entry,

Defendants Shanna Cheatham and Fred O'Brien d/b/a Insurance Concepts have now

prevailed on all issues raised by Bell's Third Amended Complaint; namely, damages, all

state law claims, and declaratory / injunctive relief.  Dkt. 105, 163, 164, 165.  As such,

they are "prevailing parties" within the meaning of 17 U.S.C. § 505.  This includes a

finding that Bell's claims for theft / conversion and unfair competition were insufficient

and preempted as a matter of law.  Dkt. 105.  The Court also concluded that Bell

---

[4] As to Deft Taylor, the following is relevant:  On August 26, 2014, this Court issued its "Entry
On Defendant's Motion For Summary Judgment" (hereinafter "SJ Order") in Case No. 1:13-cv-
798-TWP-DKL ("Case 798").  *See* Case 798, Dkt. 105.  With respect to Deft Taylor, the SJ
Order stated as follows:  "Because Mr. Bell admits that Mr. Taylor and Taylor Computer
Solutions did not use or infringe upon the copyright of the Indianapolis Photo, he cannot
maintain his claims against them.  All claims against Mr. Taylor and Taylor Computer Solutions
based upon the Indianapolis Photo are therefore **DISMISSED with prejudice** and Defendants'
Motion is **GRANTED** as to these claims."  *SJ Order*, at 5.  Accordingly, this dismissal of Bell's
claims *with prejudice* via summary judgment adjudication constitutes a "final decision" within
the meaning of 28 U.S.C. § 1291 and confers "prevailing party" status as to Deft Taylor.

[5] Note:  *See also* Case No. 1:14-cv-785-TWP-DKL, Dkt. 21 ("Order on Motion to Dismiss") and Dkt. 43 ("Order on
Motion to Amend Judgment").  A second case filed by Bell against Taylor based on the same claim was dismissed
on *res judicata* grounds.

sustained no damages from any purported infringement by Cheatham and O'Brien and that Bell had either no grounds, or speculative grounds at best, for *any* category of damages. Dkt. 105. "[A] defendant that prevails in copyright litigation is presumptively entitled to fees under § 505." *FM Industries*, 614 F.3d at 339 citing *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008).

In determining whether to exercise its discretion to award costs and fees in a copyright case, a Court may look to a number of nonexclusive factors including: (1) the frivolousness of the action; (2) the losing party's motivations for filing or contesting the action; (3) the objective unreasonableness of the action; and (4) the need to "advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 (1994). The Seventh Circuit has refined this standard further, stating that while "prevailing plaintiffs and prevailing defendants are to be treated alike," the presumption in favor of awarding fees to a prevailing defendant is "very strong." *Assessment Technologies of Wisconsin, LLC v. Wire Data, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004). The rationale is that:

> the prevailing party in a copyright case in which the monetary stakes are small should have a presumptive entitlement to an award of attorney's fees. When the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong. For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from exercising his rights."

*Id.* at 436.

"[A] defendant that prevails in copyright litigation is presumptively entitled to fees under § 505." *FM Industries*, 614 F.3d at 339 citing *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008). For this reason alone, the Court should award these prevailing defendants their fees. To the extent the court requires additional reasons, the analysis of the *Fogerty* factors also weighs in favor of this court exercising its discretion to award fees.

5

## A.     Frivolousness

When the merits of Bell's case was fully litigated and put to their proof, as they were

here, he was found to have filed an action for which he had no grounds for a money judgment.

The fact that Plaintiff recovered nothing from this case (Dkt.106, 165) bears this out.  As the

court noted in *Eagle Serv. Corp. v. H20 Ind. Serv.*, 532 F.3d 620, 623 (7th Cir. 2008):

> "So the suit was frivolous even if there was a copyright violation.  When a plaintiff is just
> suing for money and he has no ground at all for obtaining a money judgment, the fact that
> his rights may have been violated does not save his suit from being adjudged frivolous."
> *Durr v. Intercounty Title Co.*, 14 F.3d 1183, 1188 (7th Cir. 1994);  *Compaq Computer
> Corp. v. Ergonome Inc.*, 387 F.3d 403 (5th Cir. 2004); *further citations omitted*."

*Eagle Serv. Corp.*, 532 F.3d at 623.  As such, Bell should be found to have filed a frivolous case.

Certain facts underscore the frivolous nature of his filing.  Indeed, at the time the initial

suit was filed, Bell had <u>no</u> basis for statutory damages under § 504 and attorney fees award under

section 505 (assuming he prevailed) based on his untimely registration of the Indianapolis Photo,

nearly eleven years after the date of first publication.  *See* Dkt. 105 at 6 (fn 1); *see also* Dkt. 5,

¶¶'s 25, 26; *see also* Dkt. 82 at pp. 21-26; *see also*  17 U.S.C. § 412.  In his summary judgment

Response, Bell admits as much.  Dkt. 90, p.23-24.  Moreover, to the extent he relied on an

Indiana conversion statute as an alternate basis for attorney fees, this reliance was unjustifiable

on the basis of well-settled law which should have given Bell notice that such state claims were

legally untenable and headed for dismissal based on federal preemption.  Dkt. 105 at 8-10.  The

fact that this Court found preemption applicable to Bell's theft claim <u>even as to defendants who

were defaulted</u> underscores this.  Case 766, Dkt. #'s 150 through 156.  Lastly, Bell's basis for the

actual damages he did seek were speculative at best, as shown by the Court's ruling on the Taylor

Defendants summary judgment motion.  Dkt. 105, at 5-8.

The fact that numerous defendants paid what was undoubtedly a coerced settlement and

that several defaulted defendants were assessed statutory damages (*see* Case 766, Dkt. #'s 150

6

through 156), <u>after not fighting the case at all</u>, does not change the fact that, when the true facts of this case were brought to light, as they were here, Plaintiff was revealed to have made a claim he could not support.

While Plaintiff may contend that this case was not frivolous merely because he lost two summary judgment motions, had he undertaken an adequate level of pre-suit investigation and legal research, he should have ascertained the following: (1) that the bare-bones factual allegations set forth in his complaint were insufficient to state a claim;[6] (2) that the facts of this case did not justify a separate count for theft / conversion insofar as well-settled law would result in federal preemption of all non-copyright claims;[7] (3) that as to the Taylor Defendants, there existed no factual basis at all for an award of statutory damages;[8] and (4) that he should have registered his photographs (if indeed they are his) with the United States Copyright Office <u>before</u> filing suit, not after.[9]  However, instead of a reasonable pre-suit factual and legal investigation, Bell proceeded to commence with the settlement extraction process as soon as he could.

In addition, Plaintiff has persisted in filing frivolous motions throughout this litigation. These included numerous motions for sanctions against opposing counsel and/or witnesses,[10] as well as challenging every single discovery ruling issued by the Magistrate.[11]  As the court noted in *FM Industries v. CitiCorp Credit Serv.*, 614 F.3d 335, 339 (7th Cir. 2010), "[t]his litigation

---

[6] *See Bell v. McCann, et al.*, Case No. 1:13-cv-00799-TWP-DKL, Dkt. 10.

[7] *See* Case No. 766, Dkt. No.'s 150 through 156, Case No. 798, Dkt. 105.

[8] *See* Plaintiff's Opposition to Taylor Defendant's Motion for Partial Summary Judgment (Dkt.90, pp.23-24): "The Plaintiff admitted at the Pretrial Conference that his Count One is not eligible for statutory damages under 17 U.S.C. § 504(c)."  Nevertheless, Plaintiff continued to propound discovery which required the Taylor Defendants to explain why they were <u>not</u> liable for such damages.  *See* Dkt. 98, p.18.

[9] *See* Order to Show Cause, Case 766, Dkt. 56.

[10] Case 766, Dkt. No.'s 45, 46, and 49; Case 798, Dkt. No's 9, 24, and 76.

[11] Case 798, Dkt. 47, 93, and 94.

was marked by excessive and unnecessary filings that richly deserve the label vexatious."  Such

an observation seems apropos here as well.  As was the case in *FM Industries*, so too should this

Court assess damages under 28 U.S.C. § 1927 for vexatious multiplication of the proceedings.

That statute provides as follows:

> "Any attorney or other person admitted to conduct cases in any court of the United States
> or any Territory thereof who so multiplies the proceedings in any case unreasonably and
> vexatiously may be required by the court to satisfy personally the excess costs, expenses,
> and attorneys' fees reasonably incurred because of such conduct."

*28 U.S.C. § 1927* ("Counsel's liability for excessive costs"); see also *In Re TCI Ltd.*, 769 F.2d

441, 445-446 (7th Cir. 1985).[12]  Needless to say, this statute is wholly applicable to Bell's

Motion to Reconsider (Dkt. 147), a motion this Court denied largely on the basis that the

positions advanced by Bell appeared to consist of little more than rehashing previously rejected

arguments and/or attempting to make arguments that may have been previously available but

were neglected.  Dkt. 164, generally.

    Based on the foregoing, as well as other factors cited herein, it could fairly be concluded

that Bell's case against the Taylor Defendants was frivolous.

### B.      Motivation

#### 1.      Extraction of Quick Settlements

    Bell's motivation for filing this action was to coerce quick settlements from defendants

who lacked the resources to mount a defense.  As such, this case is remarkably similar to the

---

[12]  "The principle underlying § 1927, Rule 11, and the bad faith exception to the American Rule is that in a system requiring each party to bear its own fees and costs, courts will ensure that each party really *does* bear the costs and does not foist expenses off on its adversaries. One cost of a lawsuit is research. An attorney must ascertain the facts and review the law to determine whether the facts fit within a recognized entitlement to relief. This may be a costly endeavor. Defense against a colorable claim also may be very costly. It would warp the system if a lawyer for a would-be claimant could simply file a complaint and require the adversary to do both the basic research to identify the claim and then the further work needed to craft a response. Suits are easy to file and hard to defend.  Litigation gives lawyers opportunities to impose on their adversaries costs much greater than they impose on their own clients. The greater the disparity, the more litigation becomes a predatory instrument rather than a method of resolving honest disputes."  *In Re TCI Ltd.*, 769 F.2d 441, 445-446 (7th Cir. 1985).

other copyright lawsuits filed by Bell in this district.  In *Bell v. Lantz*, Case No. 1:13-cv-35-TWP-DKL (hereinafter "Lantz case"), Dkt. 236, one of the "multiplicity of [copyright] suits in this Court" filed by Bell (*Id.* at 3), this Court has previously held that Bell is "**a plaintiff who was using his knowledge and status as a practicing attorney to file meritless suits and to attempt to outmaneuver the legal system**." *Id.*  Further, it held "that the motivation of Mr. Bell in filing [these actions] appears to be an attempt to extract quick, small settlements from many defendants instead of using the judicial process to protect his copyright against legitimate infringing actors." *Id.* at 4.  Such is the case here.

Mr. Bell, is an attorney who retired on December 31, 2009 from Cohen & Malad ("C & H").  *See* "Pltf. Interrogatory No. 3," attached as Exhibit 3, hereto.  In his pleadings, he has stated that he was a photographer who took a photograph of the skyline of Indianapolis, Indiana during March of 2000 ("Indianapolis Photo") and published same on the internet later that year.  Dkt.5. There is no reliable evidence, if any at all, which suggests this was done with a profit motive at such time (i.e. 2000-01).  Indeed, in discovery propounded to them, C & H indicated that Bell was paid nothing for the use of the Indianapolis Photo in C & H's promotional materials.  Dkt. 98, p.20.  Also, there is no evidence that Bell took any steps to perfect his copyright prior to filing the spate of copyright infringement lawsuits in this district commencing in June, 2011.[13]

Following retirement, Bell started a website, RichBellPhotos.com, in March of 2011. Dkt.98, p. 2, ¶ 52.  Around that time, he was made aware that the Indianapolis Photo was being copied and used by others for website / internet marketing purposes.  *See* "Pltf. Interrogatory No. 2," attached as Exhibit 4 hereto.  After using the internet to ostensibly ascertain the identity of the purported infringers (Dkt. 5), Bell made a series of financial demands for what he claimed was unauthorized use of the Indianapolis Photo (e.g. Dkt. 83, Attachment No.1).  For example,

---

[13] *See* "Attorney Goes After Copyright Infringers For Theft of His Own Photo, Ten Years Later." *Slyck News* (08/09/2015) (Slyck.com).

9

Deft Cheatham was contacted by Bell at her home one evening in Spring, 2011 and subjected to a verbal haranguing and demands for money. *Cheatham dep.*, p. 125, lns.16-25, p.126, lns. 1-25, p. 127, lns.1-8, attached as Exhibit 5 hereto.

Once Bell filed his initial lawsuit against the Taylor Defendants in June, 2011, he propounded discovery which included a request that each defendant produce their tax returns and/or income records covering a span of eleven years (2000 - 2011). *See* Dkt.46, 96 at 3, and 105 at 8. Bell's rationale for doing so was speculative at best. *Id*. All the while, Bell continued to make "settlement" demands, a significant portion of which were dedicated to attorney fees, either actual or potential. *See* Email from Plaintiff, dated 06/12/13, attached as Exhibit 6 hereto. As has been noted in at least one article published on the Bell lawsuits, the threat of an exorbitant attorney fees award against them was, in large part, the "hammer" that coerced "settlements" from a number of defendants.[14]

Despite being deprived of tax returns, Bell nevertheless took advantage of the discovery process to lecture his examinees (during depositions) on the law and using the implied threat of financial ruin to extract concessions. Such legal "pontificating" seems odd given that Bell himself did not either recognize, or acknowledge, the need to register his photograph(s) with the U.S. Copyright Office until <u>after</u> suit had been filed. Case 766, Dkt. 56. To illustrate, note the following exchange during the deposition of Cameron Taylor:

> Q:    You do understand, sir, that if I have to reconvene this deposition, that you could be responsible for the costs of any reconvening.
>
> A:    Understood.
>
> Q:    **It's also understood that, should I be successful in this litigation, that the costs of this deposition will be asked to be added to your judgment.**
>
> A:    I understand.

---

[14] *See* "Attorney Sues Hundreds Over Use of Indy Skyline Photo," article by Dave Stafford, *Indianapolis Business Journal*, April 9, 2014.

Q:      Okay.  Ander do you have any idea what depositions cost?

A:      600 to 1,000.

*C. Taylor dep*., p.8, lns. 24-25 to p.9, lns. 1-10; *see also* pp. 101-103; dep. attached as Exhibit 7

hereto.  Similar exchanges occurred in the depositions of Cheatham and O'Brien.  It bears noting

that this "word of warning" (i.e. February 12, 2014) was issued <u>after</u> Plaintiff stated to the Court

that statutory damages (including attorney fees) were unavailable (i.e. May 14, 2013) and at a

point that he should have known that an award of attorney fees under state statute was highly

unlikely.  In sum, Bell's motivation has been to monetize infringement in a manner that does a

disservice to the spirit of the Copyright Act.

2.      Similarities to Other "Copyright Troll" Litigation - Avoidance of Filing Fees

The similarities between the Bell lawsuits and other recent copyright infringement

litigation (e.g. *John Doe* lawsuits[15]) cannot be ignored.  At its core, Plaintiff appears to be using

the courts and offices of the District Court for the Southern District of Indiana as the machinery

to perpetuate his "business revenue model."  This included misjoining multiple unrelated

defendants in a single suit so as to avoid paying filing fees, a fact noted by this Court in its

"Order of Severance" in Case No. 1:14-cv-525, dated May 15, 2014 (Case 525, Dkt.21) by its

---

[15] *Malibu Media, LLC v. John Does 1-24*, 2012 U.S. Dist. LEXIS 114236, 2012 WL 3400703 (D. Co. Aug. 14, 2012);  *Next Phase Distribution, Inc. v. Does 1-27*, 284 F.R.D. 165 (S.D.N.Y. 2012); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672 (S.D. Fl. 2011); *Paradox Pictures, Inc. v. Does 1-20*, 2012 U.S. Dist. LEXIS 159558, 2012 WL 5464221 (D. Mass. Nov. 5, 2012); *Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150 (N.D. Ca. 2011); *Media Products, Inc., DBA Devil's Film v. John Does 1-26*, 2012 U.S. Dist. LEXIS 125366, 2012 WL 3866492 (S.D.N.Y. Sept. 4, 2012); *PW Productions, Inc. v. Does 1-19*, 2012 U.S. Dist. LEXIS 159553, 2012 WL 5464217 (D. Mass. Nov. 5, 2012); *Bubble Gum Productions, LLC v. Does 1-80*, 2012 U.S. Dist. LEXIS 100203, 2012 WL 2953309 (S.D. Fl. July 19, 2012); *Zero Tolerance Entertainment, Inc., 9035 Independence Ave., Canoga Park, CA 91304 v. Does 1-45*, 2012 U.S. Dist. LEXIS 78834, 2012 WL 2044593 (S.D.N.Y. June 6, 2012); and *SBO Pictures, Inc. v. Does 1-3036*, 2011 U.S. Dist. LEXIS 137361, 2011 WL 6002620 (N.D. Ca. Nov. 30, 2011); *Third Degree Films v. Does 1-47*, 286 F.R.D. 188 (D. Mass. 2012); *Third Degree Films v. Does 1-72*, 2012 U.S. Dist. LEXIS 159538, 2012 WL 5464177 (D. Mass. Nov. 5, 2012); *SBO Pictures v. Does 1-41*, 2012 U.S. Dist. LEXIS 159536, (D. Mass. Nov. 5, 2012); *New Sensations, v. Doe*, 2012 U.S. Dist. LEXIS 157504, 2012 WL 5389921 (D. Mass. Nov. 2, 2012); *New Sensations, v. Does 1-201*, 2012 U.S. Dist. LEXIS 135791, (D. Mass. Sept. 21, 2012); *Third World Media, LLC v. Does 1-21*, 2012 U.S. Dist. LEXIS 159593, 2012 WL 5464266 (D. Mass. Nov. 5, 2012).

statement that "[s]uch unrelated claims by against unrelated defendants belong in different suits, in part to ensure that plaintiffs pay the required filing fees (emphasis).  Case 525, Dkt. 21, p.4 citing *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Although the Bell lawsuits are absent the kind of "paralyzing social stigma" of illegally downloading internet pornography which is inherent in the *Doe* cases, these cases nevertheless feature the same strategic plaintiff's approach of leveraging antiquated copyright laws, a threat of ruinous attorney fee / damages awards, and exorbitant defense costs to effectively coerce "settlements" from defendants unwilling and unable to wage a protracted legal battle.[16]  It is notable, that these cases have featured *sua sponte* orders to show cause for why Rule 11 sanctions should not be issued.

At some point, the Court should take stock of the fact that an <u>attorney</u> is the one engaging in conduct consisting of, among other things: (1) demanding tax returns despite no cognizable basis for doing so; (2) thumbing his nose at the discovery process by failing to produce a *<u>single page</u>* of documentation responsive to that which was requested[17]; and (3) engaging in threatening, insulting, and embarrassing lines of questioning during depositions having no relevance to the subject matter of the litigation.[18]  While Bell may claim that he is merely zealously pursuing his rights, such behavior reasonably appears to skirt the line of abusing one's law license.

---

[16] "Absent the prospect of recovering their attorney's fees, individual BitTorrent defendants simply cannot justify defending themselves, as the best outcome they could expect is "not a small award, but no award." *Assessment Technologies of Wisconsin, LLC v. Wire Data, Inc*., 361 F.3d 434, 436 (7th Cir. 2004).

[17] Only after the case was essentially over did Bell claim to have complied with discovery.  Dkt. 110.

[18] *See* Dkt. 67, pp.10-11.  During his deposition of Defendant's witness, Jessica Wilch, Bell propounded a number of questions relating to her prior bankruptcy, eviction(s), prior lawsuits, and a sex change operation.

## C.      Objective Unreasonableness

The "objective unreasonableness" of Plaintiff's claim is evidenced by: (1) Plaintiff's intentional misjoinder of multiple defendants (*see* sect. IV(B)(2) *supra*); (2) request for damages awards which are wholly inconsistent with any set of facts; and (3) unreasonable behavior during discovery.  One of the central pillars of Bell's strategy was to coerce settlements from potential or actual defendants with threats of huge attorney fee awards for which the defendant would be liable.  As discussed, *supra*, his demands for attorney fees were completely unjustified under any set of facts.

Bell's level  of cooperation with discovery was minimal, at best.  Despite a Court Order compelling him to produce documents (Dkt. 88, 103), Bell did not produce so much as one page that was responsive to the Taylor Defendants Request for Production.  As a result, the Taylor Defendants were forced to litigate the entirety of this case, including the summary judgment phases, without such materials.  Further, Bell's "get it somewhere else" approach resulted in the added cost of $277.50 incurred by ordering the requested materials from the United States Copyright Office.  *See* "Bill of Costs," filed contemporaneously herewith.  The fact that this Court has previously labeled Bell's conduct related to discovery "not only unreasonable, but without merit" (Dkt.88, p.4) speaks volumes.  Not only that, but on the day that discovery was due, Bell filed an appeal of the Magistrate's decision which was ultimately unsuccessful.  *See* Dkt.103.  Bell filed a motion for protective order without making any attempt to establish any criterion for doing so.  Dkt. 89, 103.  On the other hand, Bell thought nothing of asking for eleven years worth of tax returns having no evidentiary relevance to this case.  Dkt. 46.

Lastly, while not technically a part of this case, Bell's tactic of filing a separate lawsuit against Deft Taylor (i.e. Case No. 1:14-cv-785)("2014 case") represents a waste of the parties' and this Court's resources in re-litigating a matter  (i.e. "Nighttime Photo") which had been

13

addressed in this case. *See* 2014 case, Dkt. 21, 43.  In sum, Plaintiff's conduct throughout this

matter, at a minimum, supports a reasonable inference of unreasonableness.

**D.     Particular Circumstances to Advance Considerations of Compensation and Deterrence.**

This factor strongly weighs in favor or awarding Defendant his attorney's fees.  As Judge

Write so aptly put it in *Assessment Technologies of Wisconsin, LLC v. Wire Data, Inc.*, 361 F.3d

434, 436 (7th Cir. 2004), "BitTorrent Plaintiffs "have outmaneuvered the legal system.  They've

discovered the nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable

defense costs.  And they exploit this anomaly by accusing individuals of illegally downloading a

single pornographic.  Then they offer to settle- for a sum calculated to be just below the cost of a

bare-bones defense."  Absent the prospect of recovering their attorney's fees, individual

BitTorrent defendants simply cannot justify defending themselves, as the best outcome they

could expect is "not a small award, but no award." *Id.*

Similarly in this case, Bell has effectively parlayed his legal knowledge to exploit the

system and to a large extent, create a business model which leverages antiquated copyright laws,

a defendant's fear of high defense costs, and, until the Court's "Order of Severance" on May 15,

2014 in Case No. 1:14-cv-00525, Dkt. 21, p.4), minimal filing fees.  Accordingly, the weight of

these factors, particularly in view of the strong presumption in favor of a prevailing defendant,

favors awarding the Taylor Defendants their fees.


**V.     Additional Basis for Award - Offer of Judgment (Fed. R. Civ. P. 68)**

Make no mistake.  This case could have and *should* have ended much sooner than it did.

On July 11, 2013, the Taylor Defendants made an Offer of Judgment ("Offer") to Plaintiff,

pursuant to Fed.R.Civ.P. 68.  The Offer was in the sum of $300 per each defendant, for a total of

$900.  The Offer also provided Plaintiff with the option(s) of acceptance as to less than all

14

defendants.  A copy of the Offer is attached as Exhibit 8 hereto.  Ultimately, Bell rejected the

Offer in Judgment and opted to continue litigating this case against the Taylor Defendants.  *See*

Plaintiff's email, dated July 11, 2013, attached as Exhibit 9 hereto.  With respect to Offers of

Judgment, Fed.R.Civ.P.68(d) provides as follows:

> (d) PAYING COSTS AFTER AN UNACCEPTED OFFER. If the judgment that the offeree finally
> obtains is not more favorable than the unaccepted offer, the offeree must pay the costs
> incurred after  the offer was made.

*Fed.R.Civ.P. 68(d)*.  In this case, Plaintiff failed to obtain a judgment, thus triggering this section

of Rule 68.  "The rule's purpose is to encourage settlement and to discourage protracted

litigation."  *Sanchez v. Prudential Pizza, Inc.*, 709 F.3d 689, 691 (7th Cir. 3-4-2013)(further

citations omitted).

> "Offers of judgment under Rule 68 are different from contract offers. When a contract
> offer is made, the offeree can reject it without legal (as distinct from economic)
> consequences. Plaintiffs who receive Rule 68 offers, however, are "at their peril
> whether they accept or reject a Rule 68 offer." *Webb*, 147 F.3d at 621. Costs are
> usually a relatively minor aspect of most federal litigation, but when the costs in
> question include attorney fees, as in this case, Rule 68 takes on much greater
> significance, often exceeding the damages a successful plaintiff might recover. A
> plaintiff who rejects a Rule 68 offer but later wins a judgment in such a case may lose
> her entitlement to a substantial portion of otherwise awardable attorney fee and costs if
> she does not win more than the rejected Rule 68 offer. *See Marek*, 473 U.S. at 9, 105
> S.Ct. 3012; *Webb*, 147 F.3d at 621."

The line of cases which address ambiguities in offers that fail to address attorney fees that

would statutorily be available to a prevailing plaintiff are inapplicable in this case due to the fact

that it was the Taylor Defendants, <u>not</u> Plaintiff, who in fact obtained a judgment.

To the extent that an award of attorney fees to the prevailing party is still subject to the

court's discretion, such discretion is much more limited in the Rule 68 context.  See *Payne v.*

*Milwaukee County*, 288 F.3d 1021 (7th Cir. 2002).  See also *O'Brien v. City of Greers Ferry*, 873

F.2d 1115, 1120 (8th Cir. 1989); 12 Charles A. Wright & Arthur R. Miller, § 3006.2, at 132

(defendants may recover fees as part of the Rule 68 costs only if they can satisfy the otherwise

applicable statutory standard for recovery).  In this case, the Taylor Defendants have satisfied the

statutory standard (i.e. "prevailing party") for recovery, as well as the standard under Rule 68.

Overall, the Taylor Defendants have demonstrated an entitlement to an award of reasonable

attorney fees and costs under the "prevailing party" standard of § 505, the "Offer of Judgment"

guidelines set forth under Fed. R. Civ. P. 68, as well as the "vexatious filing" standard articulated

under 28 U.S.C. § 1927.

## VI.     Amount of Fee

Under the "lodestar" approach, the fee request of $84,689.65 sought by the Taylor

Defendants passes the most stringent standard for a "reasonable fee" to which a prevailing party

would be entitled.  In *Gusman v. Unisys Corp.*, 986 F.2d 1146 (7th Cir. 1993), a fee-shifting case

which examined the nature of fees to be awarded to the "prevailing party," the Seventh Circuit

Court of Appeals noted as follows:

> "Calculation of a reasonable fee award begins with the familiar "lodestar" calculation
> required by *Hensley v. Eckerhart*, 461 U.S. 424, 433-434, 103 S.Ct. 1933, 1939-1940,
> 76 L.Ed.2d 40 (1983), whereby the number of hours reasonably expended is multiplied
> by a reasonable hourly rate. In *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1159
> (7th Cir. 1989), this court stated that, "[i]n a properly functioning market, a 'reasonable
> fee' should approximate the market rate in the relevant community," and affirmed the
> award by the district judge, who was "better situated than this court to assess the
> reasonableness of an hourly rate, because he can consider both the experience of the
> attorneys involved and the rates charged by other Chicago lawyers." *Id.* The district
> judge did that in this case, but had he done no more he would have erred."

*Gusman v. Unisys Corp.*, 986 F.2d at 1152.

> "*Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984),
> teaches that "**reasonable fees" under fee-shifting statutes "are to be calculated
> according to the prevailing market rates in the relevant community**. . . ." The
> majority is correct that *Blum* did not deal with counsel with historical billable rates, and
> thus the inquiry cannot stop there when such counsel is involved. But nothing in
> *Continental Illinois Securities, Pressley,* or *Barrow* suggests that counsel's billing history
> renders inquiry into the prevailing market rates unnecessary or improper. Those cases do
> not eliminate altogether the *Blum* Court's conclusion that fee awards "are to be calculated
> according to the prevailing market rates in the relevant community, regardless of whether
> plaintiff is represented by private or non-profit counsel." *Blum v. Stenson*, 465 U.S. at
> 895, 104 S.Ct. at 1547. They hold only that  when determining a reasonable fee, the

established billing  history of the prevailing party's counsel is entitled to  significant weight."

*Gusman v. Unisys Corp*., 986 F.2d at 1153.

Hourly Rate.  With respect to the "hourly rate" component of the lodestar calculation, Nelson's hourly rate of $200 per hour (Ex. 2, ¶ 2) passes any objective standard of reasonableness.  This is a rate that he has billed clients in the past.  In fact, based on a **2010** article in the Indiana Lawyer (nearly 6 years ago), showing that the median rate (at that time) for attorneys working for Barnes & Thornburg in the Indianapolis market was $375 per hour (**Exhibit 10**), it could credibly be argued that Attorney Nelson's rate is considerably *below* market value.  Further, in the Lantz case, this Court recently granted Mr. Lantz an attorney fees award of $33,974.65, based on an hourly billing rate of $410 per hour (Lantz case, Dkt. 236, at p. 5 of 6), more than *double* the hourly rate billed by Attorney Nelson, who was admitted to practice in Indiana in 2000.  Ex. 2, ¶ 2.

Hours Reasonably Expended.  As set forth on Attorney Nelson's Summary of Fees and Costs, the fee sought of $82,689.65 is based on a total of 401.7 hours @ $200 per hour, plus expenses in the amount of $2,349.65.  An additional $2,000 is estimated for preparing a reply in support of this motion.  Based on the AIPLA Survey ("Survey") attached as an exhibit to their Motion for Fees, this fee is more than in line with other fees sought in cases of this type that are resolved at the summary judgment stage and are extremely reasonable here in view of Survey results showing that for copyright infringement litigation involving under $1,000,000 in the "Other Central" region of the U.S., the median legal fee to take a case through trial is $250,000. *See* Exhibit 11.  This Court has approved the American Intellectual Property Law Association's Economic Survey as a basis for fee awards.  *Eli Lilly and Co. v. Zenith Goldline Pharm*., 264 F.Supp.2d 753, 766 (S.D. Ind., 2003).

Also, the fee sought represent the **total for <u>five</u> defendants** (not including Taylor's fees incurred in the 2014 case). Given the scope of the results obtained in this case, as well as the complexity of the issues involved, this is a manifestly reasonable figure which more than passes the scrutiny of this Court's "eye test." It is axiomatic that almost *any* fee charged is clothed with the presumption of reasonableness in situations where the client being charged prevails.

Overall, the hourly rate ($200) upon which this fee request is based is manifestly reasonable based on (1) the lodestar fee for federal cases in central Indiana; (2) the complexity of the issues in this matter; and (3) the result obtained. A cursory review of the docket history, the pleadings filed, the entries set forth on the billing statement, the results obtained, and typical fee awards granted in other cases (e.g. Lantz case, Dkt. 236) for similar results provide further support for the award requested.

**WHEREFORE**, Defendants Cameron Taylor, Taylor Computer Solutions, Fred O'Brien, Insurance Concepts, and Shanna Cheatham, by counsel, hereby move the Court for an Order granting them attorney fees and costs in the amount of **$84,689.65** as the prevailing parties in this matter; this and all relief which is just and proper in the premises.

Respectfully submitted,

/s/ John W. Nelson
John W. Nelson, Esquire
Attorney for Defendants Cameron Taylor,
Taylor Computer Solutions, Fred O'Brien,
Insurance Concepts, and Shanna Cheatham

18

**EXHIBITS**

| 1 | Summary of Fees and Costs |
|---|---|
| 2 | Declaration of John W. Nelson |
| 3 | Plaintiff Interrogatory No. 3 |
| 4 | Plaintiff Interrogatory No. 2 |
| 5 | Shanna Cheatham deposition excerpt |
| 6 | Plaintiff email dated June 12, 2013 |
| 7 | Cameron Taylor deposition excerpts |
| 8 | Offer in Judgment |
| 9 | Plaintiff email dated July 11, 2013 |
| 10 | Indiana Lawyer article |
| 11 | **AIPLA Survey** |

## CERTIFICATE OF SERVICE

I HEREBYCERTIFY that on December 16, 2015, a copy of the foregoing document was filed electronically by operation of the Court's CM/ECF system.  Notice of this filing has been served on the following parties through the Court's CM/ECF system or United States first class mail, postage prepaid, as indicated:

Richard N. Bell
richbell@comcast.net

All parties entitled to service through the Court's ECF system

*LAW OFFICE OF JOHN NELSON*

BY: /s/ John W. Nelson
JOHN W. NELSON, ESQUIRE
Attorney No. 22228-49
Post Office Box 143
Carmel, Indiana 46082
Phone: (317) 437-4607
Email: jwnelso1@yahoo.com